UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>SHAKIM CARR,<br><br>Defendant. | 19-cr-137 (ARR)<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

Before me is defendant Shakim Carr's motion for release on bail pending sentencing because of the presence of COVID-19 in his detention facility and the heightened risk that the virus poses to him, given his pre-existing medical conditions. *See* Mot. for Release, ECF No. 106 ("Def.'s Mot."). The government opposes. The defendant's motion is granted, subject to the conditions set forth below.

I assume the parties' familiarity with the facts underlying this case. In short, in October 2019, Carr pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine base, heroin, and marijuana. *See* Min. Entry, Oct. 3, 2019, ECF No. 97; Indictment ¶ 1, ECF No. 48. He is currently detained and awaiting sentencing at the Metropolitan Detention Center in Brooklyn, New York ("MDC"). Carr has borderline hypertension and asthma. Pre-Sentence Report ¶ 52 ("PSR"). He takes a prescription diuretic, hydrochlorothiazide, to treat the hypertension and uses a prescribed inhaler as needed to treat the asthma. *Id.*; *see* Inhaler Photograph Def.'s Ex. A, ECF No. 106-1. In addition, Carr's attorney asserts that Carr "has recently been placed on medication for mild seizures from an unknown cause, perhaps anxiety. He

has a 'bottom bunk pass' for this condition." Def.'s Mot. 3. He is forty years old. *See* PSR at 2. The government does not dispute that Carr has "a history of asthma, hypertension and seizures[.]" Government's Resp. to Def.'s Mot. 3, ECF No. 107 ("Gov't Resp."). Nor does the government dispute that Carr's pre-existing conditions increase his risk of experiencing severe illness if he were to contract COVID-19. *See id.*; Def.'s Mot. 3; *see also Coronavirus Disease 2019 (COVID-19) People Who Are At Higher Risk* (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (listing people with asthma and other conditions as facing heightened risk from COVID-19). The parties also agree that at least several inmates and staff members at the MDC have tested positive for COVID-19. *See* Gov't Resp. 3; Def.'s Mot. 3. The number of confirmed positive cases might understate the extent of the virus's presence at the MDC because of limited testing. *See* Frank G. Runyeon, *Prison Says It Tested Just 2 More Inmates Despite Virus Cases*, Law360 (Apr. 1, 2020, 10:10 PM), https://www.law360.com/newyork/articles/1259489.

Under 18 U.S.C. § 3143(a)(2), a person convicted of an offense that carries a ten-year maximum prison sentence under the Controlled Substances Act generally must be detained pending sentencing unless the court finds that certain conditions are satisfied. *See* 18 U.S.C. § 3143(a)(2) (referring to § 3142(f)(1)(C), which describes offenses with ten-year maximum under Controlled Substances Act). Specifically, the court may release the individual if

(A)
    (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
    (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

§ 3143(a)(2). Carr does not argue that this provision is satisfied. Rather, he relies on § 3145(c),

which provides in relevant part that

> [a] person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

§ 3145(c). Thus, the court may release a person who is otherwise mandatorily detained under § 3143(a)(2) if it (1) "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community," § 3143(a)(1), and (2) finds that "exceptional reasons" justify release, § 3145(c); *see United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (citing *United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991)) (acknowledging that this provision of § 3145(c) applies to original applications for release notwithstanding its inclusion in section that generally covers appeals); *United States v. Rentas*, No. 09 CR 555(HB), 2009 WL 3444943, at *1 (S.D.N.Y. Oct. 26, 2009) (setting forth standard under § 3145(c)).

"Exceptional [reasons] exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004) (quoting *DiSomma*, 951 F.2d at 497). This test "is necessarily a flexible one, and district courts have wide latitude to determine whether a particular set of circumstances qualifies as 'exceptional.'" *Id.* (citing *DiSomma*, 951 F.2d at 497).

First, I find by clear and convincing evidence that Carr is not likely to pose a danger to the public. *See* § 3145(c) (citing § 3143(a)(1)). I note that the government does not argue that Carr's release would endanger the public. Nor does the record reveal as much. Carr pleaded guilty to a drug distribution conspiracy. While I do not minimize the negative impact that such activity has on society, the hypothetical possibility that Carr might re-engage in this behavior during his temporary period of release before sentencing does not pose a significant risk to public safety.

3

Further, Carr's history does not suggest that his release would endanger the public. While it is true that he has previously been convicted for offenses that involved some violence, those convictions occurred about twenty years ago. *See* PSR ¶¶ 25–26. Carr's most recent conviction before the instant one occurred approximately four years ago for possession of a loaded revolver. *Id.* ¶ 32. Carr asserts that he possessed the gun only so that he could move it out of the way of a street fight. Addendum to PSR 1, ECF No. 101. While possession of a loaded gun is dangerous, Carr did not shoot or injure anyone in connection with this offense.

Second, I find by clear and convincing evidence that Carr is not likely to flee. *See* § 3145(c) (citing § 3143(a)(1)). Here, the parties disagree. The government asserts that Carr is a flight risk based on "a history of failure to appear in court and disobeying court orders." Gov't Resp. 3. The government bases this assertion on its position that Carr "has had thirteen prior bench warrants and eight prior summons warrants." *Id.* at 2. The government makes this claim without citation and has submitted no documentation that supports it. Carr asserts that his "RAP sheet" shows only four instances of "failure to appear": one was issued in 2016 and was vacated the next day, and the others occurred in 2005 or earlier. Def.'s Reply 2, ECF No. 108. This assertion aligns with his Pretrial Services Report. *See* Pretrial Services Report 3–6, ECF No. 47. Such a record does not suggest a likelihood of flight today, as the most recent bench warrant—issued in 2016—was vacated, and the other three issued about fifteen years ago or earlier. In addition, I give some weight to the fact that he has pleaded guilty in the instant case, and the Probation Department noted in his PSR that he has demonstrated acceptance of responsibility for his offense. PSR ¶¶ 11–12, 21–22. Even crediting the government's assertion that Carr was on parole for his most recent gun possession conviction when he committed the instant offense, *see* PSR ¶ 32; Gov't Resp. 3, that fact alone does not suggest that he would flee if released now. A strict home detention condition

4

would further ensure that Carr will not flee.

Next, I find that exceptional reasons warrant Carr's release. § 3145(c). The combination of the presence of COVID-19 within Carr's detention facility and his particular vulnerability to suffering severe complications if he were to contract it is exceptional. *See* Order at 3, 5–6, *United States v. McKenzie*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Mar. 30, 2020), ECF No. 443 (finding exceptional reasons justified release under § 3145(c) of defendant with asthma detained in facility with multiple confirmed cases of COVID-19); Order at 2–4, *United States v. Roman*, No. 19 Cr. 116 (KMW) (S.D.N.Y. Mar. 27, 2020), ECF No. 155 (finding exceptional reasons justified release under § 3145(c) of defendant convicted for narcotics conspiracy when he had hypertension and history of brain aneurysm and was detained in facility with COVID-19 cases); *see also* Order at 1, *United States v. Padin*, No. 20-CR-135-5 (JMF) (S.D.N.Y. Apr. 8, 2020), ECF No. 84 (finding "compelling reason" justified temporary release on bail under § 3142(i) because defendant's asthma placed him at heightened risk from COVID-19); *United States v. Nkanga*, No. 18-CR-713 (JMF), 2020 WL 1529535, at *2–4 (S.D.N.Y. Mar. 31, 2020) (finding that risk that COVID-19 posed to defendant with history of asthma and stroke constituted exceptional reason for release under § 3145(c) but that court lacked power to order release under § 3145(c) after it had already sentenced defendant).

Thus, I grant Carr's application for release pending sentencing, pursuant to § 3145(c), subject to the additional condition of 24-hour home incarceration at his mother's residence, to be enforced by location monitoring using specific technology to be determined by the Pretrial Services Department. In addition, the Honorable James Orenstein, United States Magistrate Judge will impose any further appropriate conditions of release.

SO ORDERED.

Dated:	April 14, 2020	\_\_\_\_\_/s/_____
	Brooklyn, New York	Allyne R. Ross
		United States District Judge